**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS W. BLESSING**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD and JENNIE WALKER, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1204-CC-338 |
| | ) | |
| GLENN SERMERSHEIM, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel Pfleging, Judge
Cause No. 29D02-1010-CC-1362

**December 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Dr. Donald Walker and his wife Jennie Walker appeal the court's order in favor of Glenn Sermersheim. The Walkers raise one issue which we revise and restate as whether the trial court abused its discretion in denying the Walkers' motion to correct error and in awarding their former attorney Glenn Sermersheim $14,800.67. On cross-appeal, Sermersheim raises one issue which we revise and restate as whether the trial court's award of damages was inadequate. Sermersheim also requests appellate attorney fees pursuant to Ind. Appellate Rule 66(E). We affirm and deny Sermersheim's request for attorney fees.

The relevant facts follow. In late 2007, Dr. Walker met with Sermersheim, who practices law in the areas of tax planning, tax controversies, and business transactions with significant tax issues including mergers and acquisitions, to discuss a situation that he had with the Internal Revenue Service ("IRS"). Scott Cole, one of the Walkers' attorneys, informed Sermersheim that the amount of tax liability the IRS was claiming was about $880,000. At the initial meeting, Sermersheim told Dr. Walker regarding his fee that "[It] could be $40,000. It could be $60,000. It could be $100,000. We don't know. These things are very open ended, and you don't want to go through a full trial. You're going to lose." Transcript at 86.

Dr. Walker retained Sermersheim in December 2007. The fee agreement indicated that Sermersheim would perform legal services for a fee of $275 per hour and that Sermersheim would need a retainer of $5,000 to be paid upon execution of the agreement. The Walkers signed the fee agreement and paid Sermersheim $5,000 as a retainer fee.

2

At some point in the spring of 2008, Sermersheim met with Dr. Walker in downtown Indianapolis, and Dr. Walker gave Sermersheim a check for $8,545. At some point, Sermersheim sent the Walkers invoices for his work in the matter. In an e-mail dated March 25, 2008, Sermersheim informed Jennie Walker that there would be a "lot of work for [him] to do in the next few weeks." Plaintiff's Exhibit 10. Sermersheim also attached an invoice and stated: "Please try to pay this soon since it is now over 45 days." Id.

On July 3, 2008, Sermersheim called Dr. Walker regarding the status of the case and said: "By the way, my June 11[th] invoice that I personally gave you at our meeting June 12[th] is still not paid three weeks later." Transcript at 110. Dr. Walker said: "Yeah, I'll get you a check soon." Id. Dr. Walker then stated that "this is just getting to be a lot of time." Id. at 110-111. Sermersheim informed Dr. Walker that he had another $10,000 of unbilled time, and Dr. Walker stated: "What? Are you kidding me?" Id. at 111. Dr. Walker also told Sermersheim: "I'm not paying you this. I'm not paying you another dime." Id.

In a letter dated July 11, 2008, Dr. Walker wrote to Sermersheim indicating that he had decided to no longer retain him as legal counsel. The letter indicated that Sermersheim's direction to resolve the matter was not acceptable to him. The letter also stated: "You have been paid more than necessary at this point in time and would [sic] like to be reimbursed from some of the $5,000 retainer fee. Contract asked for $1000.00, then you changed to $5,000.00 verbally." Plaintiff's Exhibit 7.

3

On October 15, 2010, Sermersheim filed a complaint against the Walkers alleging breach of contract and unjust enrichment and requesting damages of $18,210.67. On December 15, 2011, the court held a bench trial. Sermersheim testified to the foregoing facts and that he had five or six meetings with Dr. Walker and an equal number of phone calls. When asked to summarize the complexity of the case, Sermersheim stated:

> A family partnership issue is very complex just of its own nature. This one was even more complex because the purported structure that they were trying to set up, they didn't even document it that way. There was never any capital contributions to form these entities. The checking accounts were never set up. They were co-mingled. Dad kept all of the tax refunds. He paid all the taxes out of his checking account. Kids never paid taxes. Nothing was followed. Apparently real estate was supposed to be transferred and deeds were signed, but they weren't recorded. So I said, you're facing a huge uphill battle in not having these LLCs disregarded.

Transcript at 78-79. Sermersheim also testified that the outstanding balance of the Walkers' account with him was $18,210.

Dr. Walker testified that he never received a single bill from December 2007 until September 2010 and that he did not ever recall paying Sermersheim $8,500 or anything beyond $5,000.[1] Dr. Walker denied that certain meetings listed on the invoices occurred, that they occurred for the length of time listed on the invoices, or that he received communications from Sermersheim. Dr. Walker testified that he does not deal with e-mail and did not recall providing Sermersheim with Jennie's e-mail address, but after a voicemail message left by Dr. Walker for Sermersheim was played, Dr. Walker admitted that he gave Sermersheim Jennie's e-mail address.

---

[1] At one point, Dr. Walker testified: "It's possible, but I don't recall writing two checks." Transcript at 68.

4

At the end of the trial, the court gave the Walkers' attorney fifteen days to submit a memorandum and gave Sermersheim's attorney seven days to file a response. The court stated that after the parties filed their memoranda, then "either party could request findings, or you could just submit a straight order." Id. at 206. Neither party requested special findings.

In January 2012, the court entered a judgment in favor of Sermersheim in the amount of $14,800.67. Specifically, the court's order stated:

## JUDGMENT ENTRY

On December 15, 2011, [Sermersheim] appeared in person and by counsel, Thomas W. Blessing, and [the Walkers] appeared in person and by counsel, Arvin R. Foland, for trial. The Court has jurisdiction over the parties. Subject-matter jurisdiction exists under I.C. § 33-29-1-1.5(1). Witnesses were sworn, evidence was presented and the Court requested proposed orders and took the matter under advisement.

Each side has submitted proposed Orders and the Court having reviewed the proposed orders, the exhibits and the trial testimony and being duly advised in the premises, pursuant to Trial Rules 54 and 58, the Court now enters judgment as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment shall be and hereby is entered in favor of [Sermersheim] and against [the Walkers], jointly and severally, in the principal amount of $14,800.67 (52.3 hours x $275.00 and disbursement of $418.17) plus court costs of $159.00; and post-judgment interest at the rate of eight per cent (8%) per annum until said judgment is satisfied.

Appellants' Appendix at 54.

On February 9, 2012, the Walkers filed a motion to correct error requesting that the court modify its judgment or grant a new trial. The Walkers alleged that they checked their records after the trial and found that they had a check evidencing a payment of $8,545 to Sermersheim. The Walkers requested that the court "modify or grant a new

trial on its decision herein by giving credit against the judgment amount for the $8,545.00 paid leaving $6,255.67 in the final judgment, and thus correct the error committed." Id. at 61. The Walkers' motion to correct error was deemed denied in March 2012.

The issue is whether the trial court abused its discretion in denying Walker's motion to correct error and in awarding Sermersheim $14,800.67. We generally review rulings on motions to correct error for an abuse of discretion. Speedway SuperAmerica, LLC v. Holmes, 885 N.E.2d 1265, 1270 (Ind. 2008), reh'g denied; Ind. Bureau of Motor Vehicles v. Charles, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. Lighty v. Lighty, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), reh'g denied.

To the extent that the court entered findings in its January 10, 2012 order, the trial court apparently did so *sua sponte*. In general, *sua sponte* findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). When a trial court has made findings of fact, we apply the following two-tier standard of review: whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. Id. Findings will be set aside if they are clearly erroneous. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Id. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. Id. To determine that a finding

6

or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. Id.

A general judgment standard applies to issues upon which the trial court made no findings. Zukerman v. Montgomery, 945 N.E.2d 813, 818 (Ind. Ct. App. 2011). A general judgment may be affirmed based on any legal theory supported by the evidence. Rea v. Shrover, 797 N.E.2d 1178, 1181 (Ind. Ct. App. 2003). As we conduct our review, we presume the trial court followed the law. Id. It is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. Id. Generally, "'[a] client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services.'" Galanis v. Lyons & Truitt, 715 N.E.2d 858, 861 (Ind. 1999) (quoting Ind. Professional Conduct Rule 1.16 cmt.).

The Walkers appear to argue that the trial court failed to address the payments that they made to Sermersheim and that the evidence presented at trial clearly established that they were entitled to a credit of $13,545. The Walkers point out that Sermersheim testified that the Walkers had paid the initial retainer of $5,000 on January 6, 2008, and a later payment of $8,545 on June 10, 2008, which totaled $13,545. The Walkers also point out that Dr. Walker claimed that he did not have any knowledge of a payment to Sermersheim of $8,545, but that following the trial, Dr. Walker located the copy of the check made out to Sermersheim for $8,545 that corroborated Sermersheim's testimony. The Walkers also allege that the court's order did not indicate any set-offs or credits.

7

Sermersheim argues that both of the payments which the Walkers contend were overlooked were admitted into evidence. Sermersheim also argues that the Walkers' argument rests on their belief that the court failed to include or consider the $13,545 in payments which they made to Sermersheim, but "[t]hey do not point to anything in the record to support this argument, which amounts to a hunch." Appellee's Brief at 9. Sermersheim contends that a trial court is presumed to have based its decision on the evidence admitted. Sermersheim also argues that the Walkers' "accounting is backwards; the issue at trial was the amount of *unpaid* fees which Sermersheim was entitled to recover, not the total amount of his fees." Id. at 10. Sermersheim contends that the Walkers waived the defense of payment because it is an affirmative defense and the Walkers did not assert it in their answer. Sermersheim also alleges that to the extent the trial court's alleged failure to consider these payments amounts to error, the Walkers invited it when Dr. Walker denied making a payment beyond the $5,000 retainer.[2]

On cross-appeal, Sermersheim argues that he presented evidence that he had performed legal work for the Walkers at the agreed upon rate of $275 per hour for a total of $31,157.50 in fees and $598.17 in disbursements, that subtracting the payments of

---

[2] Sermersheim mentions in his brief that Dr. Walker adamantly denied making the very $8,545 payment for which he now seeks credit and cites to page 180 of the transcript. The following exchange occurred during the examination of Dr. Walker by his attorney:

Q.     So, if [Sermersheim] said that you met downtown and that's when you gave him the $80 - $8545 check, do you deny that?

A.     I deny that. That's absolutely not true. One down – one downtown meeting and that was it. That's – that was enough. There's no way I would ever have gone back downtown.

Transcript at 180. Based upon this exchange, it appears that Dr. Walker was adamant about his statement that there was only one meeting downtown. We also observe that, as noted earlier, Dr. Walker testified: "It's possible, but I don't recall writing two checks." Id. at 68.

$5,000 and $8,545 from these amounts equals a balance due from the Walkers of $18,210.67, and that the court's judgment of $14,800.67 was inadequate.

In their reply brief, the Walkers argue that "[s]imply because Sermersheim wanted the issue to be the unpaid balance, the testimony of the witnesses addressed the totality of the fees, not just the unpaid portion." Appellants' Reply Brief at 3. The Walkers also argue that the trial court did not address the payments that Sermersheim had already received in its order. The Walkers contend that it is reasonable that Dr. Walker did not remember and could not find the payment for the $8,545 after such a long period of time and inactivity. With respect to Sermersheim's cross-appeal, the Walkers argue that his argument should be waived for failure to present a cogent argument and that he is asking this court to reweigh the evidence and the credibility of the witnesses.

To the extent that the Walkers suggest that the trial court ignored the check written by Dr. Walker in the amount of $8,545, we observe that Sermersheim's complaint acknowledged that the Walkers paid him for some of his services, that Sermersheim testified that Dr. Walker gave him a check for $8,545, and that the court admitted a document illustrating the Walkers' current balance as of September 24, 2010, which noted that Sermersheim had received a payment of $8,545. With respect to Sermersheim's cross-appeal, we observe that the Walkers and Sermersheim presented conflicting evidence regarding the interactions between the Walkers and Sermersheim and the hours worked. While it is not clear exactly how the trial court arrived at an award of $14,800.67, the court's award was within the evidence presented and neither party requested specific findings under Ind. Trial Rule 52. We cannot say that the court's

9

findings were clearly erroneous or that the evidence positively requires the conclusion contended for by either the Walkers or Sermersheim. See McClamroch v. McClamroch, 476 N.E.2d 514, 520 (Ind. Ct. App. 1985) ("First, Emily's argument [that] the children cannot complain about the specificity of the findings because they did not request findings under T.R. 52 is well taken."), reh'g denied, trans. denied; State ex rel. Williams v. Lugar, 180 Ind. App. 611, 619 n.6, 390 N.E.2d 210, 215 n.6 (1979) ("Since appellants did not request findings of fact, they cannot complain that the trial court provided findings of fact on only some of the issues.").

Regarding Sermersheim's request for appellate attorney fees, Ind. Appellate Rule 66(E) provides that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorney fees is limited to instances when an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Orr v. Turco Mfg. Co., Inc., 512 N.E.2d 151, 152 (Ind. 1987). An appellate tribunal must use extreme restraint in exercising its discretionary power to award damages on appeal "because of the potential chilling effect upon the exercise of the right to appeal." Tioga Pines Living Ctr., Inc. v. Ind. Family & Social Serv. Admin., 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), affirmed on reh'g, trans. denied. Indiana appellate courts have classified claims for appellate attorney fees into substantive and procedural bad faith claims. Boczar v. Meridian St. Found., 749 N.E.2d 87, 95 (Ind. Ct. App. 2001). To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly void of all

10

plausibility. Id. Substantive bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Wallace v. Rosen, 765 N.E.2d 192, 201 (Ind. Ct. App. 2002). To prevail on a procedural bad faith claim, a party must show that the appellant has flagrantly disregarded the form and content requirements of the rules of procedure, omitted or misstated relevant facts, and filed briefs written in a manner calculated to require the maximum expenditure of time by the opposing party and reviewing court. Kozlowski v. Lake Cnty. Plan Comm'n, 927 N.E.2d 404, 412 (Ind. Ct. App. 2010), trans. denied. Appellant's conduct need not be "deliberate or by design" to support a procedural bad faith claim. Thacker v. Wentzel, 797 N.E.2d 342, 347 (Ind. Ct. App. 2003) (quoting Boczar, 749 N.E.2d at 95).

While it is true that the Walkers' arguments in this appeal were unpersuasive, the Walkers attempted to support their argument with legal authority. Based upon our review of the record and the briefs, we do not find the Walkers' contentions utterly devoid of all plausibility. See Taflinger Farm v. Uhl, 815 N.E.2d 1015, 1019 (Ind. Ct. App. 2004) (holding that the appellee should not receive appellate attorney fees where the appellant supported his challenge with pertinent legal authority from which an argument could have been made and noting that the appellant's contentions were not utterly devoid of all plausibility). We also do not find that the Walkers flagrantly disregarded the form and content requirements of the rules of appellate procedure or that their briefs were written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Accordingly, we deny Sermersheim's request for appellate attorney fees.

11

For the foregoing reasons, we affirm the trial court's denial of the Walkers' motion to correct error and award of $14,800.67 to Sermersheim, and we deny Sermersheim's request for appellate attorney fees.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.