**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 29 2014, 10:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CARLOS I. CARRILLO**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) | |
| | ) | |
| N.H., A.I-H. and P.I-H., Minor Children, | ) | |
| | ) | |
| A.I-H., Father, | ) | |
| | ) | |
| Appellants-Respondents, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1310-JT-901 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Faith A. Graham, Judge
The Honorable Crystal A. Sanders, Magistrate
Cause Nos. 79D03-1306-JT-42, 79D03-1306-JT-43, 79D03-1306-JT-44

**April 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

A.I-H (Father) appeals an order terminating his parental rights to his minor children N.H., A.I-H, and P.I-H.[1] As there was a reasonable probability the conditions resulting in the children's removal and continued placement outside of Father's care will not be remedied and termination was in their best interests, we affirm.

## FACTS AND PROCEDURAL HISTORY[2]

R.I-H (Mother) and Father are the parents of N.H., born in 2009; A.I-H, born in 2011, and P.I-H, born in 2012. The facts favorable to the trial court's judgment[3] are that in December of 2012 the children were adjudicated as Children in Need of Services (CHINS) after the Department of Child Services (DCS) found the children had been left home alone all day on October 9, 2012. They were "extremely distressed" and their diapers were "heavily soiled." (App. at 13.) The DCS noted Mother's reports of domestic violence between her and Father and the numerous safety concerns at the house, which was in "deplorable" condition. (*Id.*)

The trial court granted DCS wardship of the children and ordered Father to 1) participate in and follow the recommendations of a substance abuse assessment, a domestic

---

[1] The parental rights of R.I-H, the children's mother, were terminated in the same order, but she does not participate in this appeal.

[2] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal" issued on September 18, 2012, and effective on July 1, 2012. *See* Ind. Supreme Court Cause No. 94S00-1209-MS-522. Therefore, the citations to the transcript will be to the "A/V Rec." We acknowledge the ongoing cooperation of the Honorable Faith A. Graham of the Tippecanoe Superior Court and parties' counsel in the execution of this pilot project.

[3] Father's Statement of Facts includes numerous facts that were not favorable to the judgment, in violation of Ind. Appellate Rule 46(A)(6)(b). See, e.g., *Rea v. Shroyer*, 797 N.E.2d 1178, 1179 (Ind. Ct. App. 2003).

violence abuse assessment, and a parenting assessment; 2) participate in visitation with the children as agreed by "treatment team," (*id*. at 12); 3) give DCS a list of relatives; and 4) participate in the Fatherhood Initiative Program.[4]  In a Parental Participation Decree Father was ordered not to possess or consume alcohol.  Father canceled some visitations because of his work schedule and had "little or no support system to assist him in caring for the children."  (*Id*.)

DCS petitioned for termination of Father's parental rights and a hearing was conducted in August of 2013.  In October 2013 the trial court entered an order granting the petition.

## DISCUSSION AND DECISION

A parent's interest in the care, custody, and control of his or her children is a fundamental liberty interest, *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009), *reh'g denied*, but parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights.  *Id*.  Therefore, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.  *Id*. at 1259-1260.

When reviewing termination of parental rights, we do not reweigh evidence or judge witness credibility.  *Id*. at 1260.  We consider only the evidence and reasonable inferences most favorable to the judgment.  *Id*.  Here, the trial court entered findings of fact and

---

[4]  Father would participate in that program if a Spanish-speaking provider was available.  If there was not, he would be referred to "Child and Family Partners."  (App. at 12.)

conclusions thereon in granting the State's petition to terminate Father's parental rights.

When reviewing findings of fact and conclusions of law entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id*. We will set aside the judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.* When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *In re Termination of Parent-Child Relationship of D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.*

Indiana Code § 31-35-2-4(b)(2) requires that a petition to terminate a parent-child relationship involving a CHINS allege:

> (A) one (1) of the following exists:
>     (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
>     (ii) a court has entered a finding that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
>     (iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;
> (B) there is a reasonable probability that:
>     (i) the conditions that resulted in the child's removal or the reasons for placement outside the homes of the parents will not be remedied; or
>     (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

4

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Because subsection (b)(2)(B) is written in the disjunctive, the trial court need only find one of the two elements is satisfied. *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 373 (Ind. Ct. App. 2006), *trans. denied*. We therefore need address only whether there is a reasonable probability the conditions that resulted in the child's removal or the reasons for placement outside the homes of the parents will not be remedied and whether termination is in the best interests of the child.[5]

The State's burden of proof in termination of parental rights cases is one of clear and convincing evidence. *In re G.Y.*, 904 N.E.2d at 1260. Clear and convincing evidence need not reveal that the continued custody by the parent is wholly inadequate for the child's survival; it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the parent's custody. *Id.* at 1261. The State must prove by clear and convincing evidence every element set forth in Ind. Code § 31-35-2-4(b)(2), (A)-(D), and if it does not prove any one of the four statutory elements, it is not entitled to a judgment terminating parental rights. *Id.*

The State demonstrated there was a reasonable probability the conditions resulting in the children's removal and continued placement outside of Father's care would not be remedied. In making such a determination, a trial court should judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration

---

[5] Father does not argue the requirements of Indiana Code § 31–35–2–4(b)(2)(A) were not satisfied, or that there was no satisfactory plan for the care and treatment of the children.

evidence of changed conditions. *In re J.T.,* 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied.* It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children,* 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied.*

The trial court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id.* A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.,* 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

The trial court heard testimony[6] Father had not completed, or even participated in, any kind of alcohol assessment or counseling – in fact, he had resisted participation. Father was not drinking as much as he had in the past, but was still consuming alcohol in violation of the Parental Participation Decree. Father had been referred to Child and Family Partners for counseling, but he was dismissed for noncompliance. He participated for a time in the

---

[6] Much of this testimony is reflected in the trial court's finding no. 31, which finding Father does not challenge on appeal.

Fatherhood Engagement Program, but he did not show progress. On several occasions, he refused the service providers entry into his home. The Court Appointed Special Advocate was asked if she had "seen any change or great improvement in the parents since the removal that would lead you to believe they are capable to care, protect, and [unintelligible] these children the way they deserve," (A/V Rec. No. 3; 08/28/13; 14:51:12-14), and she replied "not significant enough change that I don't think [the neglect] will occur again." (*Id*. at 14:51:12-14.)

We acknowledge evidence of Father's commendable progress in many respects, but we may not reweigh the evidence before the trial court or second guess its judgment regarding the credibility of the witnesses before it. DCS provided sufficient evidence there was a reasonable probability the conditions resulting in the children's removal and continued placement outside of Father's care will not be remedied to permit the termination of Father's parental rights.

There was also sufficient evidence to permit the trial court to find termination was in the children's best interests. Determination of the best interests of the children should be based on the totality of the circumstances. *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). In making this determination, the trial court must subordinate the interests of the parent to those of the children involved. *Id.* In addition to the evidence noted above, there was evidence before the trial court that Mother had reported domestic violence in the home prior to the CHINS adjudication, and Mother had ongoing depression and substance abuse issues. Her parental rights were terminated in the same order Father now appeals. Still,

Mother and Father continued to live together in an apartment with a roommate. They both testified they were not in a relationship, but continued to live together for financial reasons. The trial court found "Mother . . . does not believe the children should return to the home with both Mother and Father as they argue often." (App. at 32.) There was ample evidence to permit the court to find termination was in the children's best interests.

As DCS demonstrated there was a reasonable probability the conditions resulting in the children's removal and continued placement outside of Father's care will not be remedied and termination was in the children's best interests, we affirm the termination order.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.