## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 06 2015, 9:58 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Lori B. Schmeltzer
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Angela B. Swenson
Swensen & Clark LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tamara Krebs,

*Appellant-Petitioner,*

v.

Michael C. Krebs,

*Appellee-Respondent*

February 6, 2015

Court of Appeals Cause No.
49A02-1402-DR-66

Appeal from the Marion County
Superior Court
The Honorable Timothy W. Oakes,
Judge
Cause No. 49D13-0708-DR-35061

**Vaidik, Chief Judge.**

# Case Summary

[1]     Tamara Krebs ("Mother") appeals from the trial court's order granting Michael C. Krebs ("Father") primary physical custody of the parties' two children. Mother argues that the trial court abused its discretion in finding a substantial

change in circumstances warranting a modification. Because we find no abuse of discretion, we affirm.

# Facts and Procedural History

[2] Mother and Father were divorced in 2008. The parties have two children, H.K., born in August 2001, and I.K., born in September 2003. Mother moved to Michigan shortly after the parties divorced. Although Mother and Father have shared legal and physical custody since the divorce, the children have lived primarily in Michigan with Mother since 2008. Both parties have remarried.

[3] Father filed a petition to modify custody in April 2013. His petition alleged that a custody modification was necessary for a number of reasons, including domestic violence that had occurred between Mother and the children's stepfather ("Stepfather") and Stepfather's violence toward I.K. *See* Appellant's App. p. 90-93. The court held a hearing on Father's petition in January 2014.

[4] Father explained his concerns more thoroughly at the hearing. He testified that Mother and Stepfather had a volatile relationship and described repeated incidents of domestic violence dating back to 2008. *See* Tr. p. 14-17. Father also expressed concern about Stepfather's treatment of the children—Father testified that Stepfather called the children disparaging names and had been violent toward I.K. *Id.* at 17 ("[I.K.] was hit in the back of the head by Stepfather."), 18-19 (describing I.K. being hit on the leg with a twisted towel),

34 (testifying that Stepfather called H.K. a b**** and I.K. a mother******).

Stepfather had also threatened to kill the children's friends and family. *Id.* at 33. Father believed that Stepfather's behavior was negatively affecting I.K.'s mental health and described an incident in 2013 when I.K. overdosed on his ADHD medication. *Id.* at 21-22 ("He took an overdose of medication so he could be good."). Father also testified that six months before the hearing, he took I.K. to the hospital after I.K. told him that he wanted to kill himself.[1] *Id.* at 35.

[5] Preeti Gupta, the guardian ad litem (GAL) assigned to the case, testified that her primary concerns were the domestic violence between Mother and Stepfather and I.K.'s mental health, and she cited eight police reports indicating domestic violence between Mother and Stepfather and four reports from child-protective services.[2] *Id.* at 76. GAL Gupta said that she spoke with Mother and that Mother was in denial about the domestic violence. *Id.* at 64-65. She testified that I.K. needed mental-health treatment and she worried that "it could get worse" if the children remained in the care of Mother and Stepfather. *Id.* at 62. GAL Gupta recommended that Father have custody of the children. *Id.* at 61-62.

---

[1] The record suggests that I.K. actually attempted suicide, but no further information is given. *See* Tr. p. 35 (Counsel: "But there was a suicide?" Father: "Attempt, correct."), 99 (Counsel: "You also know [that Father] took [I.K.] to Riley for attempted suicide?" Mother: "Yes.").

[2] It appears that some of these reports were made in response to calls Father made to child-protective services.

[6] Mother opposed the custody modification. She testified that H.K. was excelling in school and was very involved in extracurricular activities in Michigan. *Id.* at 85, 87. She admitted that I.K. was struggling, but she said that his grades were improving and he, like H.K., was involved in extracurricular activities. *Id.* at 84, 87. Mother admitted that domestic violence had occurred but testified that she and Stepfather had participated in therapy and had not been physically violent with each other since 2012. *Id.* at 85-89, 101-02. She denied Father's claims that Stepfather had threatened the children and said that Stepfather had not been abusive toward the children "in two years." *See id.* at 90, 100.

[7] Stepfather also testified. He stated that the incidents with Mother involved only "argu[ing] and yell[ing]." *Id.* at 104. He also denied being violent with I.K. and said that he was only "jok[ing] around" with I.K. *Id.* at 106. He testified that he could not recall ever threatening the children. *Id.*

[8] At the end of the hearing, the trial court granted Father's request to modify custody:

> [A]fter hearing the evidence, the Court decides that there is a continuing state of change in circumstances and that it's in the best [interests] of the children that they be switched over with physical custody to [] [F]ather. Joint legal custody will be with both parents; physical custody with [] [F]ather.

*Id.* at 114-15.

The court later entered an order formalizing the custody modification, stating in relevant part:

> The Court finds that there has been a continuing and substantial change of circumstances to modify custody of the children in this matter and that it is in the children's best interests for a modification of custody.
>
> The parties are granted joint legal custody of the children.
>
> [Father] is granted physical custody of the children. The Court finds that it is in the best interest of the children for this modification of custody.

Appellant's App. p. 28-29 (formatting altered).

Mother was granted parenting time according to the Indiana Parenting Time Guidelines.

Mother now appeals.[3]

# Discussion and Decision

Mother argues that the trial court erred in finding a substantial change in circumstances warranting a custody modification.

---

[3] Before proceeding with this appeal, Mother filed a motion to correct error that was unrelated to the issue of custody. The trial court granted Mother's motion to correct error. Mother also filed an emergency motion to stay the custody-modification order in the Court of Appeals. The motion to stay was denied.

[13] We give wide latitude to our trial courts in family-law matters, and we review a trial court's custody determination for an abuse of discretion. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010). We neither reweigh the evidence nor assess witness credibility. *Id.* Rather, we consider only the evidence and inferences most favorable to the trial court's judgment. *Id.* The party seeking to modify custody has the burden of demonstrating that the existing custody arrangement should be altered. *Id.* In order to reverse a custody modification, the evidence must positively require reversal, even if the evidence might have supported another conclusion. *See Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011).

[14] Our legislature has defined the circumstances under which a custody order may be modified, providing in relevant part:

> (a) The court may not modify a child custody order unless:
>> (1) the modification is in the best interests of the child; and
>> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter.
>
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Ind. Code § 31-17-2-21.

[15] Section 31-17-2-21 requires a trial court to "consider the factors listed under section 8 of this chapter," but the court is not, absent a request by a party, required to make special findings regarding the substantial changes in the parties' circumstances. *In re Paternity of J.T.*, 988 N.E.2d 398, 400 (Ind. Ct.

App. 2013) (citation omitted).  Neither party here requested findings and conclusions from the trial court, but the trial court entered some findings sua sponte.  Such findings control only the issues they cover, and we apply a general-judgment standard to any issue on which the court made no findings.  *Rea v. Shroyer*, 797 N.E.2d 1178, 1181 (Ind. Ct. App. 2003).  A general judgment entered with findings may be affirmed based on any legal theory supported by the evidence, and we presume the trial court followed the law.  *Id.*

[16]  The factors the court must consider under Section 31-17-2-8 include:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and
>>
>> (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to the child's:
>
>> (A) home;
>>
>> (B) school; and
>>
>> (C) community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Mother argues that the trial court erred in finding a substantial change in circumstances warranting a custody modification. We disagree.

The record supports the trial court's decision to modify custody. Father and GAL Gupta testified about Mother and Stepfather's volatile relationship, and GAL Gupta cited eight police reports indicating domestic violence between the pair. Although Mother and Stepfather testified that they participated in therapy and that their relationship had not been physically violent since 2012, the trial court was entitled to consider Mother and Stepfather's significant history of discord. Moreover, GAL Gupta testified that Mother was in denial about what had occurred. There was also evidence that Stepfather called the children degrading names, was violent toward I.K., and had threatened to kill the children's friends and family. Father and GAL Gupta believed that Stepfather's behavior had a particularly negative impact on the parties' youngest child, ten-year-old I.K., who spoke to Father about committing suicide just six months before the custody-modification hearing. GAL Gupta testified that I.K. needed mental-health treatment and she worried that "it could get worse" if the children remained in the care of Mother and Stepfather. She recommended that Father have custody of the children.

This evidence supports the trial court's conclusion that there has been a substantial change in circumstances warranting a custody modification,

particularly as it relates to a pattern of domestic violence between Mother and Stepfather, the children's adjustment to their home in Michigan, and I.K.'s mental health. Likewise, this evidence supports the conclusion that a custody modification is in the children's best interests.

[20] On appeal, Mother argues that Stepfather has never been physically violent toward I.K. and has never mistreated H.K. in any way. She describes the children as happy, carefree, and well-adjusted to their Michigan home, and she argues that modifying custody would disrupt their lives. Notably, she does not address certain important issues, such as I.K.'s talk of suicide. Mother's view of the evidence directly contradicts Father's and GAL Gupta's, and accepting it would require us to reweigh the evidence and assess witness credibility, which we will not do.

[21] We conclude that the trial court did not abuse its discretion in granting Father's request to modify custody.

Affirmed.

Baker, J., and Riley, J., concur.