## In the Matter of the PATERNITY OF: A.J.R.

**D.B.M., Appellant–Respondent,**

**v.**

**STATE of Indiana By Next Friend A.R., Appellee–Petitioner.**

**No. 53A01–9804–CV–163.**

Court of Appeals of Indiana.

Nov. 20, 1998.

---

Andrew C. Mallor, Kendra Gowdy Gjerdingen, Mallor Clendening Grodner & Bohrer, Bloomington, for Appellant–Respondent.

William H. Andrews, Angela F. Parker, Andrews, Harrell, Mann, Chapman & Coyne, P.C. Bloomington, for Appellee–Petitioner.

## OPINION

KIRSCH, Judge.

D.B.M. (Father) appeals the trial court's determination of child support and other expenses in connection with an action instituted by A.R. (Mother) to determine the paternity of A.J.R. (Daughter). Father raises the following issues on appeal:

I. Whether the trial court abused its discretion in determining Father's weekly gross income by considering income from a summer fellowship.

II. Whether the trial court abused its discretion in basing the award of retroactive child support on Father's current income level rather than upon his income level during the retroactive period.

III. Whether the education support order was proper.

IV. Whether Father must pay the entirety of Mother's out-of-pocket expenses associated with the birth of Daughter.

V. Whether the trial court properly awarded Mother extraordinary travel expenses associated with obtaining court-ordered blood testing.

VI. Whether an award of attorney fees to Mother was proper.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Mother and Father met in Paris, France during the first week of July, 1983. Mother was a thirty-three-year-old University of Iowa student, and Father was a twenty-three-year-old undergraduate student who had stopped in Paris for forty-eight hours while on his way from his home in Italy to England where he was to write his graduation dissertation. Mother and Father engaged in sexual intercourse with each other during their stay in Paris.

Mother returned to the United States and informed Father that she was pregnant. She contacted Father again when the baby, a girl, was born on March 7, 1984. Mother sent Father written correspondence until 1987. Mother lost touch with Father until 1993, when she again wrote to him. In May of 1995, Mother telephoned Father and asked to meet with him to discuss support for their daughter. Father refused. Mother then wrote to Father to confirm their telephone conversation.

Mother instituted a paternity action pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) in Ramsey County, Minnesota on December 26, 1995. The action was sent to England as the responding state but was later dismissed because Father was moving out of the English court's jurisdiction to the United States. Mother again filed a URESA action in Ramsey County, Minnesota on September 3, 1996. This action was sent to Indiana as the responding state and filed in the Monroe Circuit Court on November 14, 1996.

The trial court granted Father's request for blood and genetic testing to determine Daughter's paternity. Mother was out of the country on an academic sabbatical to West Africa at the time. She and Daughter flew from West Africa to Nottingham, England to obtain the court-ordered testing. The cost of the testing was $73.95. Mother's travel expenses were in excess of $1,500.00.

On February 3, 1998, the trial court conducted an evidentiary hearing and asked the parties to submit proposed orders. On March 12, 1998, the trial court adopted Mother's proposed order as the final order of the court. It provides in relevant part as follows:

"1. [Father], . . . employed as an associate professor at Indiana University, is the father of the minor child, [Daughter], born March 7, 1984, in Iowa City, Iowa to [Mother]. . . .

2. [Mother] shall have the sole physical and legal custody of the minor child, [Daughter].

3. [Father] is ordered to pay child support through the office of the Clerk of Monroe County, in the sum of $130 per week beginning Friday, February 6, 1998, pursuant to the Indiana Child Support Rules and Guidelines as evidenced by the attached Child Support Obligation Worksheet attached hereto and made a part hereof by reference, and continuing on each and every Friday thereafter until the minor child reaches the age of twenty-one (21) years, is sooner emancipated or the further order of the Court. Said child support award is based upon [Father's] 1997 annual income of $55,992, which in-

cludes a summer income of $5,000. Similar income is found to be available to [Father] in future summers from various sources if pursued and applied for by [Father].

4. Based upon the fact that [Father] has provided no support for [Daughter] for nearly fourteen years after her birth, that during most of such time [Father] has been beyond the jurisdiction of the Courts of the United States and his actual whereabouts often unknown, that [Father] has not responded to the telephonic and written communications of [Mother] during such time and that [Mother] has actively pursued a paternity action through Minnesota authorities, first in England and then in Indiana, since December, 1995, after [Father's] location was discovered, [Mother] shall recover retroactive support from [Father] at the full rate of $130 per week from November 14, 1994, two years prior to the date of the filing of this action. Judgment is hereby entered in favor of [Mother] and against [Father] in the amount of $21,710.00, being retroactive support for a period of 167 weeks through January 30, 1998, which judgment shall be payable at the rate of $100 per week beginning Friday, February 6, 1998, and continuing on each and every Friday thereafter until said judgment, and all interest accruing thereon, is paid in full.

5. The minor child, [Daughter], both of whose parents have Ph.D degrees, has the intelligence, ability, aptitude and aspiration to pursue a college and post graduate education. [Mother] and [Father] shall each pay their pro rata share, based on their incomes at the time, of the reasonable expenses incurred by [Daughter] in the pursuit of a college and post graduate education, which expenses shall include, but not be limited to, tuition and fees, room and board, books and transportation. [Daughter] shall apply for all available financial aid, and the parties' obligation for the payment of her college and post graduate expenses shall be reduced by the amount of any scholarships and grants (but not student loans) awarded to her.

6. [Mother] shall provide medical insurance coverage for [Daughter], and shall further be responsible for the payment of the first $839.00 incurred for ordinary medical expenses for [Daughter] in any one calendar year. Thereafter, [Father] shall be responsible for the payment of 48% and [Mother] responsible for the payment of 52% of any additional uninsured medical expenses incurred in any calendar year.

7. [Mother] is entitled to recover from [Father] for her out-of-pocket expenses for prenatal, delivery and post delivery medical services (*Roe v. Doe*, 154 Ind.App. 203, 289 N.E.2d 528 (1972)), and judgment is entered for [Mother] and against [Father] in the amount of $923.52 for such medical expenses, which judgment, together with all accrued interest, shall be paid within six months of the date of this Order.

8. [Mother] proceeded reasonably in obtaining the blood testing for herself and [Daughter] requested by [Father] while [Mother] was working in West Africa, and is entitled to recover the reasonable expenses incurred in obtaining such blood testing in England. Judgment in the amount of $1,646.63 for such blood testing expenses is entered in favor of [Mother] and against [Father], which judgment, together with all accrued interest, shall be payable by [Father] within one year of the date of this Order.

9. [Mother] obtained private legal counsel herein upon the urging and advice of the Ramsey County authorities in Minnesota and [Father] should reimburses [sic] [Mother] for her reasonable legal fees and expenses incurred herein. Judgment in the amount of $2,577.79 is entered in favor of [Mother] and against [Father] for reimbursement of such legal expenses which judgment shall be payable by [Father] at the rate of $50 per month, beginning on March 1, 1998, and continuing on the first of each month thereafter until said judgment is paid in full."

*Record* at 44–47. Father appeals.

## DISCUSSION AND DECISION

■ The determination of child support is committed to the trial court's sound discretion and will not be overturned unless clearly erroneous. *Scott v. Scott*, 668 N.E.2d 691, 695 (Ind.Ct.App.1996). A child support order is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *McGinley–Ellis v. Ellis*, 638 N.E.2d 1249, 1252 (Ind.1994).

### I. Calculation of Weekly Gross Income

Father contends that the trial court erred by including a $5,000 summer fellowship in the calculation of his gross income. Father contends that the funds were a one-time payment for extra hours he worked during the prior school year and that similar funds were not certain to be paid in subsequent years.

■ The Indiana Child Support Guidelines must be applied when establishing child support in paternity actions. Ind. Child Support Guideline 2 (Commentary). When fashioning a child support order, the trial court's first task is to determine the weekly gross income of each parent. *Scott*, 668 N.E.2d at 695–96. While the guidelines advocate a total income approach, Guideline 3(A) recognizes the fact-sensitive nature of each situation and provides many practical suggestions for addressing irregular income. The commentary suggests that:

"There are numerous forms of income that are irregular or nonguaranteed which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact-sensitive.

Each of the above illustrations is sensitive to downturns in the economy. The fact that overtime, for example, has been consistent for three (3) years does not guarantee that it will continue in a poor economy. Further, it is not the intent of the Guidelines to require a party who has worked sixty (60) hour weeks to continue

doing so indefinitely just to meet a support obligation that is based on that higher level of earnings. Care should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled.

Where a portion of the income is dependable and a portion is contingent upon the production of the worker, earnings of a business or some other variable, the child support obligation may be based on that portion on which the party can depend. The additional or irregular income can then be dealt with by requiring the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly). . . .

Judges and practitioners should be innovative in finding ways to include income that would have benefited the family had it remained intact, but be receptive to deviations where articulate reasons justify them."

Ind. Child Support Guideline 3(A) (Commentary 2(b)).

This court has recently considered the nature of irregular income and observed that "[t]he thrust of the commentary and related cases is that the trial court's discretion in excluding overtime and bonus income is grounded in a determination that the income is not dependable or would place a hardship on a parent to maintain." *Thompson v. Thompson*, 696 N.E.2d 80, 84 (Ind.Ct.App. 1998). While the court in *Thompson* made its observations in the context of overtime and bonus income, such observations were drawn from the guidelines and commentary concerning irregular income generally. Because the income at issue here is also irregular, it being derived from Father's voluntary extra work, the *Thompson* court's observations logically apply. Thus, whether to include Father's summer income in the calculation of his child support obligation rests upon a determination of the income's dependability.

The evidence in the Record concerning the nature of Father's summer income includes a letter from the Chair of the Promotion and Budget Committee of the department in which Father is a professor. The letter states that Father received a "Faculty Fellowship" for the summer of 1997, "for course development in connection with our 'Cultures of Science and Medicine' program." *Record* at 68. At the time of the hearing, Father was a tenured associate professor and had been employed at the university for eighteen months, including only one summer. Father explained that the fellowship he received in that summer was to compensate him for additional administrative work he performed during the 1996–97 school year on a proposal which his department was promoting. He testified that it was a one-time payment and that he had not applied for similar funds for the summer of 1998 because he had not performed any additional work as in the prior year. Father further testified that the deadline had passed for submitting applications for summer teaching positions, which positions were limited and difficult to obtain. Father stated that he had applied for a research grant for the summer of 1998, but that his application was denied. He also explained that extra work in the summer took away from his research. There is nothing in the Record to contradict Father's assertions concerning the nature of his summer income.

■ The trial court found that income similar to the $5,000 fellowship was "available" to Father in future summers "if pursued and applied for" by Father. *Record* at 45 (Finding No. 3). Use of the qualifying language "if pursued and applied for" means that the income is contingent upon Father's initiatives. A contingency resting upon the production of the worker illustrates the nondependable nature of the income at least as far as the guidelines contemplate. *See* Child Supp. G. 3(A) (Commentary 2(b)). By including the income in the calculation of Father's gross income, Father is now required to pursue optional employment duties just to meet the support obligation, a result not intended by the guidelines. *See id.* The trial court abused its discretion by including Father's summer income in its calculation of his child support obligation. For purposes of remand, we point out the portion of the

guideline commentary urging judges to be innovative in finding ways to include income, and the practical suggestion that irregular income "be dealt with by requiring the obligor to pay a fixed percentage of [the income] in child support on a periodic but predetermined basis...." *Id.*[1]

## II. Income for Retroactive Support Purposes

■■■ Father next contends that the trial court erred by calculating the amount of retroactive support based upon his current income level rather than upon his income level during the retroactive period. The Child Support Guidelines are presumptively applicable in determining the amount of a retroactive child support award. *In re A.D.W.*, 693 N.E.2d 576, 579 (Ind.Ct.App. 1998). A party seeking deviation from the guidelines must overcome this presumption by showing that application of the guidelines would be unjust or inappropriate. *Id.* The amount of retroactive support is determined in light of the circumstances of each case and consistent with standards generally governing child support awards, including the Child Support Guidelines. *Id.*

In *A.D.W.*, this court upheld a retroactive support order based upon the father's current income level rather than upon his income level during the retroactive period. Our holding was based upon the father's failure to demonstrate that application of the guidelines was unjust or inappropriate. The father did not submit a worksheet or any evidence of his or the mother's actual income during the relevant period. Furthermore, the father testified that during the relevant period, he had held various jobs in which he made more, less, or the same as he was making at the time of the hearing. *Id.* at 580.

■■■ In the present case, the evidentiary record differs in important respects from that in *A.D.W.* Father testified that from 1984, the year of A.J.R.'s birth, to 1989, he was a student with no taxable income. From 1989 to 1996, the year he assumed his current position, he was a post-doctorate research fellow. In 1994, the year beginning the retroactive period, Father was a research fellow at M.I.T., making $29,000 per year. In 1995, Father went to the University of Cambridge as a research fellow making approximately $30,000 per year depending on the exchange rate. Father submitted pay stubs from the University of Cambridge to substantiate his pay rate. Father's evidence was not contradicted. Mother has held her current position as a professor at the University of Minnesota since 1989.

Father's uncontradicted evidence establishes that application of the Guidelines to calculate the amount of retroactive support is both unjust and inappropriate. Father spent the first five years of Daughter's life as a student with no taxable income and the next seven years earning slightly more than half the salary that he earns now. To base the retroactive support order on Father's current income level which is 67 percent higher than Father's actual income during the retroactive period was an abuse of discretion. *Cf. Smith v. Mobley*, 561 N.E.2d 504, 508 (Ind.Ct.App. 1990) (in support modification context, trial court abused its discretion by failing to reduce support retroactively when obligor mother presented uncontroverted evidence that she had been unemployed and was unable to pay original support amount).

### III. Education Support Order

Father next maintains that the trial court erroneously entered an education support order without any limitation. The relevant portion of the trial court's order reads as follows:

"5. The minor child, [Daughter], both of whose parents have Ph.D degrees, has the intelligence, ability, aptitude and aspiration to pursue a college and post graduate education. [Mother] and [Father] shall each pay their pro rata share, based on

---

1. The guidelines have recently been amended to suggest a new method for including irregular income based upon a ratio of the basic support obligation to the combined weekly adjusted income. The amended guidelines are currently published in the advance sheets of the Northeastern Reporter at volume 696, No.2. For an overview and discussion of the amended guidelines, see Jeffrey Bercovitz, *Child Support Guidelines: Amendments answer perplexing questions*, Res Gestae, Aug. 1998, at 8–13.

their incomes at the time, of the reasonable expenses incurred by [Daughter] in the pursuit of a college and post graduate education, which expenses shall include, but not be limited to, tuition and fees, room and board, books and transportation. [Daughter] shall apply for all available financial aid, and the parties' obligation for the payment of her college and post graduate expenses shall be reduced by the amount of any scholarships and grants (but not student loans) awarded to her."

*Record* at 45–46.

The paternity statute provides for education support orders as follows:

"(a) Where appropriate, the support order may include:

(1) money for the child's education beyond grade 12, after the court has considered:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and the parent or parents; and

(C) the ability of the parents to meet these expenses;

. . . .

If the court orders support for a child's educational expenses at an institution of higher learning under section 3 of this chapter, the court shall reduce other child support for the child that:

(1) is duplicated by the educational support order; and

(2) would otherwise be paid to the custodial parent."

IC 31–14–11–3, –4.

 The paternity statute furthers a "*parens patriae* interest in ensuring that the child is not financially or educationally deprived merely because her parents do not live together as a family[.]" *Poulson v.*

*Poulson,* 612 N.E.2d 193, 195 (Ind.Ct.App. 1993). The educational support order in the present case goes beyond furthering this interest. The order requires Daughter's parents to pay for "a college and post graduate education[.]" *Record* at 46 (Finding No. 5). Aside from this general mandate, the order does not provide any limits upon Daughter's educational pursuits. There is no mention of in-state or out-of-state tuition. The order does not set forth whether Daughter's parents are obligated to send her to a school that is state-supported or private. The order does not address whether Daughter may pursue an education for the length of time it takes her to graduate or whether there is some limit upon the number of semesters she may attend school at her parents' expense. Daughter's ability to contribute to her education through obtaining student loans, a factor specifically enumerated in the statute, is explicitly excluded from the educational support order without explanation. The fact that both of Daughter's parents are professors and may be entitled to a tuition fee courtesy at their respective universities is not mentioned in the order despite the statute's provision that financial aid reasonably available to the child's parents must be considered. Furthermore, no mention is made of the level of academic performance required of Daughter to remain eligible for her parents' assistance.

In short, the trial court abused its discretion in entering an education support order that contains no limit upon the nature of college and post graduate studies Daughter is entitled to pursue at her parents' expense and no limit on the amounts of such expenses. For purposes of remand, we would point out IC 31–14–11–4 which requires a trial court to reduce other child support when the court enters an education support order. No such reduction was provided for in the court's present order. We would also point out the commentary to Guideline 3(E) which contains some useful suggestions on fashioning education support orders.[2]

---

**2.** The guidelines have recently been amended to include a worksheet for purposes of calculating the costs associated with a child's post-secondary

education. See note 1, *supra,* for citations concerning the amended guidelines. Such worksheet seeks in part an itemization of the child's

## IV. Birth Expenses

Father next contends that the trial court erred by requiring him to pay for the expenses Mother incurred in connection with Daughter's birth. He argues that the payment of such expenses is subject to a two-year statute of limitation. We disagree.

■ The payment of expenses associated with the birth of a child is governed by the paternity statute as follows:

"(a) The court shall order the father to pay at least fifty percent (50%) of the reasonable and necessary expenses of the mother's pregnancy and childbirth, including the cost of:

(1) prenatal care;

(2) delivery;

(3) hospitalization; and

(4) postnatal care."

IC 31–14–17–1. There is no time limitation imposed on the recovery of these expenses provided the paternity petition is otherwise timely filed. The statute, however, sets forth a minimum amount of at least fifty percent of the expenses. Here, the trial court, without explanation, ordered Father to pay the entirety of the $923.52 Mother incurred in out-of-pocket expenses for Daughter's birth. Absent any findings stating why it was appropriate for Father to pay more than fifty percent of the expenses, we cannot determine whether the trial court abused its discretion on this issue. Accordingly, on remand, the trial court must enter findings as to why its order for payment of the entire amount of the birth expenses was appropriate or enter judgment against Father for the presumptive fifty percent of the expenses.

## V. Extraordinary Travel Expenses

Father next contends that the trial court erred by ordering him to pay Mother's expenses in excess of the cost of the actual blood test used to determine his paternity. The trial court has the discretion to "tax as

costs the reasonable expenses of any medical tests authorized under IC 31–14–6[.]" IC 31–14–18–1. The question here is whether Mother's expenses were reasonable.

■ Mother filed her second paternity action in Minnesota on September 3, 1996. The cause was transferred to Indiana and filed in the Monroe Circuit Court on November 14, 1996. In October of 1996, between the time Mother filed the action in Minnesota and its registration in Indiana, Mother left the country on a sabbatical to West Africa. Father moved for blood and genetic testing on December 9, 1996, and the trial court entered an order on December 13, 1996, directing the parties to undergo such testing. Mother did not notify Father or the trial court of her circumstances or that the testing would involve extraordinary expense and unilaterally decided to incur the additional expense of obtaining the tests on foreign soil. The trial court's findings fail to set forth any reason why the extraordinary travel expenses were reasonable, and we are again unable to determine whether the trial court abused its discretion by ordering Father to pay such expenses. On remand, the trial court must enter findings as to why Mother's extraordinary travel expenses were reasonable or enter judgment against Father only for the $73.95 cost of the testing.

## VI. Attorney Fees

■ Father finally contends that the trial court erred by ordering him to pay Mother's attorney fees incurred in her prosecution of the paternity action. IC 31–14–18–2 permits the trial court to order a party to pay attorney fees. In making such an award, the trial court should consider the parties' resources, their economic conditions, and their respective ability to earn an adequate income through employment. *Dye v. Young*, 655 N.E.2d 549, 551 (Ind.Ct.App.

educational costs. Such costs cannot be determined in this case because Daughter is fourteen years old and has not selected or been admitted to a post-secondary educational institution. While we do not go so far as to say that the present education support order was premature, we cannot help but observe the challenges faced

by the trial court attempting to fashion an education support order when virtually all of the variables are unknown. Perhaps the better course of action would be to acknowledge in the order that parents' obligation to contribute to post-secondary educational expenses will be determined when such variables are known.

1995). A trial court's attorney fee award is reviewed for an abuse of discretion. *Id.*

Here, the Record shows that Father and Mother's present income is nearly identical. Father's base salary for the 1997–98 school year was $50,992. Mother's base salary for the same school year was $53,908. Father has two after-born children while Mother has none. Mother has held her current position since 1989, while Father has been on the university faculty for less than two years, prior to which he earned significantly less money than he earns now. Given the closeness of Father's and Mother's current incomes and respective earning abilities, it was an abuse of discretion to order Father to pay Mother's attorney fees.

This matter is affirmed in part, reversed in part, and remanded for a child support order fashioned in a manner consistent with this opinion.

STATON and ROBB, JJ., concur.