**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SMITH DAVIS, LLC**
Greenfield, Indiana

ATTORNEY FOR APPELLEE:

**DENISE F. HAYDEN**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE: THE PATERNITY OF, | ) |
| K.D., | ) |
| | ) |
| M.G., | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | )      No. 32A01-1209-JP-432 |
| | ) |
| S.D., | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE HENDRICKS CIRCUIT COURT
The Honorable Jeffrey V. Boles, Judge
Cause No. 32C01-0401-JP-6

**February 15, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

M.G. ("Mother") appeals the trial court's order modifying custody of her daughter, K.D., in favor of S.D. ("Father"), and awarding attorney fees to Father. We affirm in part and reverse in part.

**Issues**

The restated issues before us are:

I. whether the trial court properly modified custody; and

II. whether the trial properly ordered Mother to pay $750 toward Father's attorney fees.

**Facts**

K.D. was born in February 2003. Father executed a paternity affidavit at the time of her birth and subsequently was ordered to pay child support of $75 per week through a Title IV-D action. However, Father never initiated an action for custody of K.D. or for parenting time. Instead, Mother and Father agreed between themselves that Mother would have primary custody of K.D. with Father having visitation every Wednesday and every other weekend.

In October 2009, as K.D. was beginning first grade in the Beech Grove school district, Father stopped paying child support by mutual agreement of the parties. The parties reached this agreement because Mother was beginning third-shift work at a warehouse and Father would have K.D. in his custody much more than before, or for approximately half the time, so that he could more easily ensure that K.D. got to school.

2

This custody and support arrangement apparently was approved by the trial court in a minute entry, although there does not appear to have been a hearing on the matter.

Father has lived for several years in a home about five minutes away from K.D.'s school in the Beech Grove school district, while Mother lived outside the district about twenty-five minutes away from the school. The brother of Father's wife lives across the street from Father and sometimes helps cares for K.D. K.D. also has friends in the neighborhood where Father lives. Mother agreed that K.D. should go to school in Beech Grove.

In April 2011, Father's support obligation was again modified, with trial court approval, so that he would pay for K.D.'s daycare expenses, including after-school care, and for her school breakfasts and lunches. Father also provided health insurance for K.D. In November 2011, Mother lost her job at the warehouse and began receiving unemployment compensation of $1,248 per month. Father earns $546 per week from his employment and his wife also has full-time employment. After Mother lost her job, she reduced Father's parenting time and removed K.D. from the after-school care program against Father's wishes. Father believed that the after-school program was important for K.D.'s social and educational progress.

K.D. has struggled at school and, as of the time of the hearing this matter, was in danger of having to repeat the third grade. Father hired a tutor for K.D. at a cost of $90 per week. Additionally, K.D. frequently was tardy to or missed school during times

3

when she was in Mother's care, which prompted the school to send a letter to Father advising him of an attendance problem.

On January 23, 2012, Father filed a "Counter-Petition to Establish Paternity of Child and Provide for Her Custody, Support and Maintenance." App. p. 4. The trial court conducted a hearing on this petition on June 28, 2012. At the outset of the hearing, counsel for Father stated, "we were set today for hearing on [Father]'s petition to modify custody." Tr. p. 3. The trial court then stated its understanding, without objection, that it was considering a petition to modify custody and proceeded to receive evidence. Father also requested that Mother pay at least a portion of his attorney fees. On July 20, 2012, the trial court entered an order granting Father primary custody of K.D., with Mother having parenting time on alternating weekends. It also ordered Mother to pay $25 per week to Father in child support and to pay $750 toward Father's attorney fees.[1] Mother now appeals.

### I. Custody

We first address Mother's challenge to the award of custody of K.D. to Father. At the outset, we must acknowledge the unusual procedural posture of this case and resolve precisely what kind of order we are reviewing: an initial custody determination or a modification of custody. The distinction is critical, because there is no presumption in favor of either parent in an initial custody determination in a paternity case. In re Paternity of Winkler, 725 N.E.2d 124, 127-28 (Ind. Ct. App. 2000) (citing Ind. Code §

---

[1] Father submitted evidence that he incurred a total of $1,582.17 in attorney fees in this matter.

31-14-13-6). By contrast, when modification is requested a petitioner has the burden of showing a substantial change in one or more of the factors that courts consider to initially determine custody under Indiana Code Section 31-14-13-2 and that modification is in the child's best interests. Id.

Here, Father's counsel expressly stated to the court that he was requesting a modification of custody, not an initial custody determination. Thus, Father bound himself to the stricter burden of proof required of a custody modification as opposed to an initial determination. See Werner v. Werner, 946 N.E.2d 1233, 1245-46 (Ind. Ct. App. 2011) (holding mother waived any claim of error that trial court applied incorrect legal standard in determining child custody where she failed to object to trial court's clear statement before custody hearing of what standard it was going to use), trans. denied; see also Winkler, 725 N.E.2d at 128 (holding father in paternity case was required to meet custody modification burden where he had acquiesced for many years in mother having custody of child, even though there was no existing court-ordered initial custody determination).

We further note that when faced with a custody modification request, a trial court ordinarily cannot consider any evidence "on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interest of the child . . . ." I.C. § 31-14-13-9. This section does not apply, however, when parents stipulate as to custody of the child and the trial court summarily approves such an agreement without conducting a hearing on the matter. Dwyer v.

5

Wynkoop, 684 N.E.2d 245, 249 (Ind. Ct. App. 1997), trans. denied. Additionally, in such a situation a trial court is not prohibited from considering evidence that had not previously been brought to its attention. Id.

A decision whether to modify custody is within a trial court's discretion. Rea v. Shroyer, 797 N.E.2d 1178, 1181 (Ind. Ct. App. 2003). We may not reweigh the evidence or judge the credibility of witnesses when reviewing a custody modification. Id. We must consider only the evidence most favorable to the judgment and any reasonable inferences from that evidence. Id. "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011). "[O]ur trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." Id.

Neither party here requested findings and conclusions from the trial court, but the trial court did enter some findings sua sponte. Such findings control only the issues they cover, and we apply a general judgment standard to any issue about which the court made no findings. Rea, 797 N.E.2d at 1178. A general judgment entered with findings may be affirmed based on any legal theory supported by the evidence. Gibbs v. Kashak, 883 N.E.2d 825, 827 (Ind. Ct. App. 2008). We presume the trial court followed the law. Rea, 797 N.E.2d at 1178. In order to reverse a custody modification, the evidence must

6

positively require reversal, even if the evidence might have supported another conclusion. Best, 941 N.E.2d at 503.

Modifications of custody in the paternity context are governed by Indiana Code Section 31-14-13-6, which provides that a court may not modify custody unless it "is in the best interest of the child" and there has been a "substantial change" in one or more of the factors that a court considers when initially determining custody. Those factors are:

(1)     The age and sex of the child.

(2)     The wishes of the child's parents.

(3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)     The interaction and interrelationship of the child with:

(A)     the child's parents;

(B)     the child's siblings; and

(C)     any other person who may significantly affect the child's best interest.

(5)     The child's adjustment to home, school, and community.

(6)     The mental and physical health of all individuals involved.

(7)     Evidence of a pattern of domestic or family violence by either parent.

(8)     Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

I.C. § 31-14-13-2.

Most of the evidence presented and some of the trial court's sua sponte findings focused upon K.D.'s schooling in Beech Grove. Specifically, Mother and Father agreed to K.D. attending school in Beech Grove, beginning in the fall of 2009. For nearly two years, before Mother lost her warehouse job, K.D. was spending a great deal of time at Father's house to facilitate her attending school. At the time of the hearing, Father was living in a house in Beech Grove where he had already lived for several years, where he planned to continue residing until K.D. graduated from school, and which was five minutes away from K.D.'s school. Father also noted that K.D. has friends in the neighborhood where he lives and that he lived across the street from his wife's brother, who could and had helped care for K.D. Mother, meanwhile, was living with her grandmother approximately twenty-five minutes away from the school.

There was evidence of K.D. having attendance problems while in Mother's care.[2] Furthermore, K.D. was struggling academically. There was evidence presented that Father and his wife had been proactive in hiring a tutor to help K.D.; Mother said she was intending to do so, but had not done so. Additionally, Mother removed K.D. from after-school care program when she lost her job. Father disagreed with this decision because he believed the program helped K.D. with her school work, as well as providing an opportunity to socialize with friends.

_____

[2] Mother attempted to proffer legitimate reasons from these problems at the hearing, but it was up to the trial court to decide how much weight to give these explanations.

We conclude that this evidence is sufficiently related to a substantial change in K.D.'s adjustment to home, school, and community, particularly once she began attending school in the fall of 2009. Also, the evidence supports the conclusion that a change of custody to Father was in K.D.'s best interests. Prior to the modification of custody, K.D. was splitting time during the week between Mother's and Father's house, whereas granting custody to Father permits K.D. to live in a home that is near to her school, from which she can ride the bus to school and consistently live in one home throughout the school week, and to become further rooted in the Beech Grove community. There also was evidence from which it could be found that Father was more proactive in attempting to address K.D.'s academic struggles.

We do note that the trial court's order made no finding that there had been any substantial change in any of the statutory custody factors. However, given that neither party requested special findings and conclusions and that any findings the trial court did make were purely gratuitous, it was not necessary for the trial court to make an express finding of changed circumstances. We cannot second-guess the trial court's assessment that a modification of custody was warranted based on the evidence in the record. There is sufficient evidence of a substantial change of circumstances, as well as that a modification of custody was in K.D.'s best interests. The trial court did not abuse its discretion in ordering that modification.

## II. Attorney Fees

9

Next, we address Mother's challenge to the trial court's order that she pay $750 toward Father's attorney fees. We review this award for an abuse of discretion. Matter of Paternity of A.J.R., 702 N.E.2d 355, 364 (Ind. Ct. App. 1998). An abuse of discretion occurs if a trial court's order is against the logic and effect of the circumstances before the court. Thompson v. Thompson, 868 N.E.2d 862, 870 (Ind. Ct. App. 2007).

Neither the trial court nor Father identified the basis for an award of attorney fees in this case. Indiana generally adheres to the "American Rule" with respect to attorney fees, meaning each party must pay his or her own attorney fees absent an agreement between the parties, statutory authority, or a rule to the contrary. Fackler v. Powell, 891 N.E.2d 1091, 1098 (Ind. Ct. App. 2008), trans. denied. Indiana Code Section 31-14-18-2 does permit a trial court to order one party in a paternity custody proceeding to pay the other party "a reasonable amount for attorney's fees . . . ." "In making such an award, the trial court should consider the parties' resources, their economic conditions, and their respective ability to earn an adequate income through employment." Paternity of A.J.R., 702 N.E.2d at 363. Additionally, in interpreting a similar attorney fees statute in the dissolution context, we have held that a court "may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated." Thompson, 868 N.E.2d at 870.

Here, we can discern no equitable basis upon which to order Mother to pay a portion of Father's attorney fees. Mother was unemployed at the time of hearing and was earning considerably less in unemployment compensation income than Father's monthly

10

income from his steady full-time employment. Although Father points out Mother was living mortgage- and rent-free with her grandmother at the time of the hearing, Father by contrast was married to a spouse who had her own income from full-time, longstanding employment to supplement Father's income. Father also states that Mother "was contributing less to the support of the child" than he was. Appellee's Br. p. 11. This should not be a consideration in deciding whether to award attorney fees, given that Father was under a court order to pay child support, not to mention the greater financial resources available to him, and that Mother would have had the expected expenses associated with having been K.D.'s custodial parent. Finally, Father directs us to nothing in the record that would support a finding that Mother engaged in misconduct that led to unanticipated additional legal expenses. In sum, we conclude the trial court abused its discretion in ordering Mother to pay $750 towards Father's attorney fees, given Mother's much lower income and more uncertain financial future and the absence of any evidence of litigation misconduct. See Paternity of A.J.R., 702 N.E.2d at 364 (reversing award of attorney fees in paternity case where parties' incomes and earning abilities were "nearly identical").

### Conclusion

We affirm the modification of custody of K.D. in favor of Father, but reverse ordering Mother to pay $750 towards Father's attorney fees.

Affirmed in part and reversed in part.

BAKER, J., and RILEY, J., concur.

11