**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 10 2013, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**RODNEY T. SARKOVICS**
**ALICIA A. WANKER**
Campbell Kyle Proffitt LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE PATERNITY OF: )
H.N.L., )
                               )
C.L., )
      Appellant-Petitioner, )
                               )
          vs. )     No. 29A05-1209-JP-483
                               )
B.A., )
                               )
      Appellee-Respondent. )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
The Honorable William P. Greenaway, Magistrate
Cause No. 29D02-1201-JP-16

**June 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

C.L. ("Father") appeals from the trial court's order in a paternity action adjudicating issues regarding custody, parenting time, child support, and attorney fees, contending that the trial court abused its discretion in calculating child support, in awarding sole legal and physical custody of the child to B.A. ("Mother"), by ordering Father to pay a portion of Mother's attorney fees, and by misapplying a statute when ordering Father to obtain a life insurance policy to secure his child support obligation.

We affirm.

## FACTS AND PROCEDURAL HISTORY

H.N.L. was born on July 3, 2009. Mother and Father stipulated to the paternity of H.N.L., *viz.*, Father was H.N.L.'s biological father. Mother and Father were engaged to be married and lived together from December 2010 to June 2011, when Mother and H.N.L. moved out of the house they shared with Father and moved in with Mother's parents. Mother's parents have provided assistance with H.N.L. and continue to do so. They do not require Mother to pay rent or utilities, but Mother does buy groceries and necessities for H.N.L. Father currently resides in the two-bedroom apartment where he, Mother, and H.N.L. used to reside together, and has no family nearby.

Father did not pay child support for H.N.L. after her birth and made intermittent child support payments after the parties stopped living together. Father is a sales manager for First Feat, Inc., and earns approximately $814.87 per week. Mother is a self-employed hairstylist and is taking online classes through Harrison College on a part-time basis. After paying business expenses including booth rental fees and hair supplies, Mother's average weekly

2

income is $170.00.

Mother was the primary caregiver for H.N.L. and provided for H.N.L.'s needs since her birth. Mother established H.N.L.'s daily routine. Father typically exercises two non-consecutive overnight visits per week with H.N.L. since the parties' separation. Mother has served as the primary decision maker for H.N.L., but regularly takes Father's input into consideration when making those decisions. Mother consults Father on all major decisions regarding H.N.L., facilitates communication between Father and H.N.L., and accommodates Father's scheduling when arranging his visits with the child.

Father filed a petition to establish paternity and initiated a replevin action against Mother. Mother filed a counter-petition to establish paternity and replevin action. Mother requested sole legal and primary physical custody of H.N.L. with parenting time for Father that was consistent with Indiana Parenting Time Guidelines. Father wished to have joint legal custody and equal physical custody or parenting time. After holding a hearing on the parties' petitions, the trial court issued its order awarding sole legal custody and physical custody of H.N.L. to Mother, with Father exercising parenting time according to the parenting time guidelines. The trial court also provided for the exchange and return of items of personal property. The trial court imputed income to Mother in the amount of $300.00 per week, and Father was ordered to pay child support to Mother and was ordered to make payments to reduce the child support arrearage. The trial court also ordered Father to pay a portion of Mother's attorney fees. Father now appeals.

**DISCUSSION AND DECISION**

In this matter neither party requested findings of fact or conclusions thereon. Generally, when, as here, a trial court enters findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review; first we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Davis v. Davis*, 889 N.E.2d 374, 379 (Ind. Ct. App. 2008). In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id*. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id*. Those appealing the trial court's judgment must establish that the findings are clearly erroneous. *Id*. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id*. We do not defer to conclusions of law, however, and evaluate them *de novo*. *Id*.

**Child Support and Arrearage Calculation**

Father contends that the trial court abused its discretion in calculating the amount of Father's child support obligation and arrearage. Decisions concerning the payment of child support rest within the sound discretion of the trial court. *Dore v. Dore*, 782 N.E.2d 1015, 1018 (Ind. Ct. App. 2003). On review, we will reverse a trial court's decision in child support matters where we find that there was an abuse of discretion or if the trial court's determination on the issue is contrary to law. *Id*.

With respect to Father's income, the trial court found that Father, who is employed at

First Feat, Incorporated, earns $14.00 per hour, and sometimes receives bonuses and overtime. Father's income for the period of January 1, 2012 through February 18, 2012 was $6,443.02. Father's W-2 for 2011 showed that his wages were $41,634.75 for that year, which equaled $800.66 of weekly gross income. The trial court then added Father's 2011 wages to his 2012 year-to-date earnings to arrive at the average figure of $814.86 of weekly gross income for that fifty-nine-week period. The trial court concluded that Father's weekly gross income, for purposes of calculating child support, was $815.00, based upon $48,077.00 of income over fifty-nine weeks.

Mother did not request that Father make child support payments from the date of H.N.L.'s birth through June 30, 2011. Thereafter, for the period of July 1, 2011 through March 23, 2012, Father paid $400.00 in child support. Based upon its calculation of Father's weekly gross income, the trial court determined that Father's child support arrearage, with credit for the $400.00 payment, for that period was $4,920.00 ($5,320.00 - $400.00= $4,920.00).

Father argues that the trial court abused its discretion by including in its calculation of his weekly gross income his earnings acquired through overtime and bonuses. He contends that the trial court should have excluded this income because it was irregular income. However, based upon our examination of the Indiana Child Support Guidelines and its commentary, we have concluded that overtime and bonuses can be includable as income, but the decision is very fact sensitive. *See Thompson v. Thompson*, 696 N.E.2d 80, 83-84 (Ind. Ct. App. 1998) (inclusion of irregular income is fact sensitive requiring consideration of

5

dependability and possible hardship to the parent). "Judges and practitioners should be innovative in finding ways to include income that would have benefitted the family had it remained intact, but be receptive to deviations where articulate reasons justify them." Child Supp. R. 3, cmt. 2(b).

In this case the trial court gave Father the benefit of averaging his 2011 income, which was lower, with Father's 2012 income, in arriving at Father's weekly gross income. Father testified that he continued to work overtime and did so because he chose to make money, if he could, rather than stay at home. Father could choose which day of the week he did not want to work and did not work on Sundays. Based upon the testimony about Father's employment and the evidence of Father's earnings, we cannot say that the trial court abused its discretion in calculating Father weekly gross income.

Father also challenges the trial court's determination of the amount of his child support arrearage. In particular, Father claims that the trial court did not credit against his arrearage an additional $200.00 that he alleged he gave to Mother.

The trial court retroactively applied Father's child support obligation to the date Mother and H.N.L. moved out of Father's residence, July 1, 2011. A trial court has the discretion to award child support retroactively from a date prior to the filing of a paternity action. *In re Paternity of C.A.M.*, 835 N.E.2d 602, 606 (Ind. Ct. App. 2005). Here, the trial court chose the date Mother and H.N.L. moved out of Father's residence and noted that Mother had not requested child support from Father after H.N.L.'s birth. The trial court also acknowledged that Father contributed toward the parties' and H.N.L.'s living expenses while

6

they resided together.

Mother testified that Father gave her a total of $400.00 in child support. Father testified that he recalled giving her approximately $200.00 in child support and provided non-monetary items such as diapers and milk. When asked if Father had given Mother cash, Mother testified that Father had given her cash in the amount of $200.00 for Christmas. Father also testified, in response to a question about whether he had given Mother money, that he had given Mother approximately $200.00 in child support, "[e]xcluding a gift for a, like holidays, and stuff like that." *Tr.* at 17.

In general, a parent obligated to pay child support will not be allowed credit for payments that do not conform to the support order. *Decker v. Decker*, 829 N.E.2d 77, 79 (Ind. Ct. App. 2005). Furthermore, gifts, entertainment and other similar, incidental expenditures made by the non-custodial parent should not be credited against child support arrearages. *Payson v. Payson*, 442 N.E.2d 1123, 1129 (Ind. Ct. App. 1982) (citing *Whitman v. Whitman*, 405 N.E.2d 608, 613-14 (Ind. Ct. App. 1980)). Here, Father by his own testimony excluded the cash given to Mother as a gift, and Mother testified that Father paid more in child support--$400.00--than Father's testimony reflected-- $200.00. The trial court did not abuse its discretion in its determination of the amount that should be credited against Father's child support arrearage.

Father also challenges the trial court's calculation of the amount of income that should be imputed to Mother for purposes of determining her weekly gross income. The trial court imputed income of $300.00 per week to Mother. Father argues that the trial court should

have imputed income of $400.00 per week to Mother instead.

Child Support Guideline 3, Commentary 3(A)(3) provides as follows with respect to an unemployed parent:

> Even though an unemployed parent has never worked before, potential income should be considered for that parent if he or she voluntarily remains unemployed without justification. Absent any other evidence of potential earnings of such a parent, the federal minimum wage should be used in calculating potential income for that parent. However, the court should not add child care expense that is not actually incurred.

With respect to potential income, Child Support Guideline 3, Commentary 3 (A)(2)(c) provides as follows:

> Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable of earning more. Obviously, a great deal of discretion will have to be used in this determination. One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support. . . .

Indiana Child Support Guideline 3(A)(3) provides that where a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. Potential income is derived from the consideration of employment potential and probable earnings level, which in turn is based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. Child Supp. G. 3(A)(3). Where the obligor has no work history and no higher education or vocational training, the particular facts may indicate that the amount of weekly gross income should be set at least at the federal minimum wage level. *Id*.

Here, Mother testified that on occasion she has made as much as $400.00 per week, but that amount was not a consistent one. Mother testified that she was employed as a

hairstylist and that her weekly gross income was approximately $175.00 per week after payment of expenses relating to supplies and booth rent. She further testified that she was in the process of developing her own client base, and had only begun taking on clients of her own within the past two years. Mother was also taking online college classes on a part-time basis through Harrison College. Mother testified that minimum wage was approximately $290.00 per week. Based upon the testimony adduced at trial and the commentary set forth above, we cannot say that the trial court abused its discretion by imputing to Mother the amount of $300.00 per week in gross income, an amount just slightly above the minimum wage.

### Custody Award

Father asserts that the trial court abused its discretion by awarding Mother sole legal and physical custody of H.N.L. Father challenges the trial court's reasoning beyond consideration of the statutory factors in arriving at its decision. Father wished to enjoy joint legal and equal physical custody of H.N.L.

When a trial court is considering an award of joint legal custody, the following statutory considerations are implicated:

> (a) In a proceeding to which this chapter applies, the court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child.
> (b) An award of joint legal custody under this section does not require an equal division of physical custody of the child.
> (c) In determining whether an award of joint legal custody under this section would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint legal custody have agreed to an award of joint legal custody. The court shall also consider:

9

(1) the fitness and suitability of each of the persons awarded joint legal custody;
(2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare;
(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint legal custody;
(5) whether the persons awarded joint legal custody:
(A) live in close proximity to each other; and
(B) plan to continue to do so;
(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint legal custody; and
(7) whether there is a pattern of domestic or family violence.

Ind. Code § 31-14-13-2.3.

Here, the trial court explained its reasoning in pertinent part as follows:

22.  The Court finds that Mother is fit and suitable to have sole legal custody of [H.N.L.].  The Court has considered that Mother and Father's ex-wife testified that Father admitted to using steroids, and needles were unsecured and present in Father's living area when he vacated his ex-wife's home.  The Court has also considered that Father has had at least 1 protective order issued against him, calls Mother derogatory names, that the parties do not effectively communicate regarding [H.N.L.] and disagree regarding the custodial arrangement that is in [H.N.L.'s] best interest.  The parties live relatively close to one another, and plan to continue to do so.  The Court has also considered that Mother's home is a safe environment and that she has the emotional support of her parents.  Maternal grandparents assist both parties in transporting and caring for [H.N.L.].

*Appellant's App*. at 17-18.

Father claims that there is tenuous evidence of his use of steroids and that the testimony of Mother and Father's ex-wife did not establish that the steroids were either illegal or illicit.  He further claims that possession of needles is not necessarily illegal or illicit.  He challenges the source of the information of the protective order, Father's ex-wife,

10

and her bias against him. Father points to Mother's testimony that Father is a good parent and argues that calling Mother names might be distasteful, but is not enough to support stripping him of his parental rights. We agree with Mother's observation that Father's arguments in this regard are an invitation to reweigh the evidence, a task we may not undertake. *Davis*, 889 N.E.2d at 379.

The record reflects that the trial court considered the statutory factors in reaching the conclusion that Mother should be awarded sole legal custody of H.N.L. Mother and Father did not agree to joint legal custody. Evidence was presented to the trial court about the fitness and suitability of the parties, the parties' environments, and domestic and family violence. Ex-wife testified about her need to obtain a protective order against Father, and testimony was introduced about occurrences where Father would scream at Mother and call her derogatory names. Mother testified that Father locked himself and H.N.L. in his apartment after becoming agitated when Mother came to retrieve H.N.L. after parenting time, and law enforcement officers were called to resolve the matter.

The record further reflects that Mother and Father were unable to communicate about and agree on what was in H.N.L.'s best interest. Mother testified that Father agreed to Mother's input on the subject only when it benefitted Father. Mother testified that she considered and processed Father's input regarding major decisions concerning H.N.L. and that it was her intent to continue doing so. We cannot say that the trial court abused its discretion in awarding sole legal custody of H.N.L. to Mother.

Father also contests the trial court's award of physical custody of H.N.L. to Mother,

11

with parenting time to Father, contending that the decision constituted an abuse of discretion.

Indiana Code section 31-14-13-2 sets forth considerations relevant to determining custody in accordance with the child's best interests after a paternity determination. The statute reads as follows:

> The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
> (1) The age and sex of the child.
> (2) The wishes of the child's parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
> (A) the child's parents;
> (B) the child's siblings; and
> (C) any other person who may significantly affect the child's best interest.
> (5) The child's adjustment to home, school, and community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

Ind. Code § 31-14-13-2.

After acknowledging the statutory considerations for making such a determination, and that those considerations were taken into account, the trial court stated as follows when awarding primary physical custody of H.N.L. to Mother:

> 25. The Court finds that [H.N.L.] is well-adjusted to her present home and that she has a strong bond with Mother. The Court has also considered that maternal grandparents have a good relationship with [H.N.L.] and that [H.N.L.] is presently living in their home, and that they provide support which both parties benefit from. The court has also considered that Father has had a least one protective order issued against him and that two (2) witnesses testified that he admitted to using steroids. There was also evidence that

12

Father had left unsecured needles at his ex-wife's home, and also left his ex-wife's 7-8 year old child to get on the school bus alone without her knowledge and consent, and contrary to her wishes. Father regularly exercises parenting time and has regularly had [H.N.L.] overnight on Sundays. Father has not been exercising extended or consecutive overnight parenting time.

26. Mother shall be awarded physical custody of [H.N.L.]. Father shall have parenting time pursuant to the Indiana Parenting Time Guidelines including Regular, Extended and Holiday Parenting Time, and consistent with the age requirements set forth within the Indiana Parenting Time Guidelines, and any additional parenting time that the parties agree upon. Father's mid-week shall be on Wednesday, not overnight, unless the parties otherwise agree.

27. Both parties expressed an interest that the right of first refusal apply. Either party shall offer the other parent the opportunity to care for [H.N.L.] if that parent is unable to care for [H.N.L.] for 3 or more hours. The parent being offered the time shall not be required to accept the time, but if he or she does accept the time, it shall be at no cost to the parent offering the care.

*Appellant's App*. at 18-19.

Father appears to claim that the trial court's order does not achieve the goal of continuity and stability in the life of the child. He cites to evidence in the record of his involvement in H.N.L.'s life prior to and since her birth. He argues that the evidence relevant to the statutory factors would also favor an award of physical custody of H.N.L. to Father. Father's argument here is another invitation to reweigh the evidence, a task which we cannot undertake on review. *Davis*, 889 N.E.2d at 379. We find no abuse of the trial court's discretion here.

Father also claims that the trial court's determination that primary physical custody was not accompanied by the express statement that such an award was in H.N.L.'s best interest. He contends that the trial court is required by statute to make an express finding in that regard. An examination of Indiana Code section 31-14-13-2 leads us to conclude that

13

such finding is not statutorily required, and the trial court did not err by failing to do so. The trial court was required to examine factors that were statutorily enumerated to guide the trial court in determining a custody award that was in the child's best interests. The trial court's reasoning, which referred to the statutory factors, by implication, supported the physical custody award that was in H.N.L.'s best interest. The trial court did not err.

**Attorney Fees**

Father claims that the trial court abused its discretion by ordering Father to pay Mother's attorney fees. In particular, he argues that it was an abuse of discretion to require him to pay for her attorney fees when Mother's parents had paid for her attorney.

Indiana Code section 31-14-18-2 provides that a trial court may order a party to pay a reasonable amount for attorney fees incurred before the paternity proceedings or after entry of the judgment. When making such an award, the trial court should consider the parties' resources, their economic conditions, and their ability to earn an adequate income through employment. *In re Paternity of A.J.R.*, 702 N.E.2d 355, 363 (Ind. Ct. App. 1998). On appeal, we review the trial court's attorney fee award for an abuse of discretion. *Id*. at 364.

In its order, the trial court stated that it had considered the economic resources of the parties when assessing an award of attorney fees. Mother had requested an award of attorney fees, but Father had not. The trial court ordered Father to pay $750.00 of the $3,800.00 of attorney fees incurred by Mother. Mother's parents were assisting Mother in paying for her representation. Father acknowledges the evidence demonstrates that under any calculation his income is higher than Mother's. However, he contends that, because Mother is not

paying her attorney fees, such fact bears upon the reasonableness of the trial court's award. He asserts that the record is devoid of evidence that he is in a superior position to pay attorney fees in relation to Mother's parents' ability to pay.

We observe that the statute provides that the trial court consider the *parties' resources*. Mother's parents are not parties to this action. Nevertheless, the trial court considered Mother's and Father's economic circumstances, which was fully developed in the record before the trial court, in making the additional determination of child support. Consideration of a child support worksheet is appropriate when considering the parties' economic circumstances for purposes of an award of attorney fees. *Bessolo v. Rosario*, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012). Furthermore, the trial court had before it testimony from the parties concerning the support, financial and otherwise, that they were receiving from family members. We do not find the trial court's order that Father pay a portion of Mother's attorney fees to be an abuse of discretion.

**Life Insurance Policy**

Father contends that the trial court misapplied a statute by requiring Father to obtain a life insurance policy in the amount of $100,000.00 for the benefit of H.N.L. in order to secure the child support obligation, but failing to order Mother to do the same. He requests that the matter be remanded to the trial court to revise the order to include an obligation on Mother's part to obtain a similar life insurance policy for H.N.L.'s benefit.

Indiana Code section 31-16-3.5-1 provides that a bond required to secure the child support obligation must be in writing and secured by at least one resident freehold surety or

by a commercial insurance company. The trial court's order did just that. It required Father to obtain a life insurance policy for H.N.L.'s benefit to secure the child support obligation. On the face of the statute, there is no reciprocal requirement that both parties obtain a life insurance policy in order to secure the child support obligation, and Father cites to no authority suggesting as much.

Father raised this argument for the first time in his motion to correct error, and as such, Mother contends that the argument is waived. Potential waiver notwithstanding, Father was required to provide child support in the amount of $165.00 per week. No weekly child support obligation was entered against Mother as H.N.L.'s custodial parent. Father's reliance on *Capehart v. Capehart*, 705 N.E.2d 533 (Ind. Ct. App. 1999) is misplaced. In *Capehart*, we clarified that while an order that a noncustodial parent obtain and maintain a life insurance policy for the child's benefit is in the nature of child support, it secures future support of the child in the event the parent's death. *Id.* 538. We found in that case that Father was not paying current child support in excess of the child support guidelines by virtue of paying the premiums on the life insurance policy securing future child support payments. *Id*. Thus, the case does not hold that there is a statutory requirement that both parents obtain a life insurance policy for the benefit of the child. The trial court did not err.

Affirmed.

VAIDIK, J., and PYLE, J., concur.

16